UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COUNTER TERRORIST GROUP US and  J. K.
IDEMA,

                       Plaintiffs,

                     v.

ASSOCIATED PRESS, ASSOCIATED PRESS TV
NEWS, PAUL HAVEN, STEPHEN GRAHAM,
JASON STRAZZIO, AMIR SHAH, JOHN DOES 1-
7.

                       Defendants.

:     Index No. 07-CV-6299 (DAB)
:
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

David A. Schulz
Gayle C. Sproul
Michael Berry (*Pro Hac Vice Motion Filed*)
321 W. 44th Street, Suite 510
New York, NY 10169
(212) 850-6100

*Attorneys for Defendants Associated Press and
Associated Press Television News, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

THE COMPLAINT ...................................................................................................... 2

A.    The Parties ........................................................................................................ 2

B.    Alleged Basis for the Claims Asserted ........................................................... 2

C.    The Eleven Claims Asserted Against AP ....................................................... 5

ARGUMENT ............................................................................................................... 6

I.    THE COMPLAINT FAILS TO STATE ANY CLAIM BASED ON AP'S
USE OF IMAGES ALLEGEDLY OWNED BY PLAINTIFFS ....................... 6

    A.    The Complaint Fails to State A Claim for Either Direct or
Contributory Copyright Infringement ........................................................ 6

    B.    Plaintiffs' Other Claims Arising From AP's Alleged Use of Their
Images Are All Preempted ........................................................................ 7

    C.    The Complaint Fails to State Any Claim Based Upon the Alleged
Misuse of Plaintiffs' Images ..................................................................... 13

II.    THE COMPLAINT FAILS TO STATE ANY CLAIM BASED UPON
ALLEGEDLY FALSE STATEMENTS IN AP'S NEWS REPORTS ............... 20

    A.    The Complaint Fails to State Any Claim For Defamation ......................... 20

    B.    The Complaint Fails to State Any Other Claim Based Upon the
Contents of the AP News Reports ............................................................. 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*ABC v. Flying J, Inc.*, 2007 WL 583176 (S.D.N.Y. Feb 22, 2007) ..........................................8, 12

*Advani Enterprises, Inc. v. Underwriters of Lloyds*, 140 F.3d 157 (2d Cir. 1998).........................6

*Alvord & Swift v. Muller Construction Co.*, 46 N.Y.2d 276 (1978)...............................................24

*American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926
    (S.D.N.Y. 1996)..............................................................................................................................10

*Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425 (S.D.N.Y. 1996)......................10

*Bennett v. Columbia University*, No. BC345094 (Los Angeles Super. Ct. May 15, 2006) ...........1

*Boyd v. Drum*, 129 N.C. App. 586 (1998) ...................................................................................17

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).......................6, 8, 9

*Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280 (E.D.N.Y. 2002).................14

*Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883 (1982) ...........................................21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)........................................................3

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)........................................7, 8

*Computer Associates International v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)...........................12

*Conan Properties, Inc. v. Mattel, Inc.*, 601 F. Supp. 1179 (S.D.N.Y. 1984)..............................6, 7

*Creditsights, Inc. v. Ciasullo*, 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007) ................................15

*Demas v. Levitsky*, 291 A.D.2d 653 (3d Dep't 2002) ...................................................................23

*DirecTV, Inc. v. Cashe*, 2004 WL 1622229 (S.D. Ind. Jun. 27, 2004) .........................................12

*Dobies v. Brefka*, 273 A.D.2d 776 (3d Dep't 2000) .....................................................................23

*Dukas v. D.H. Sawyer & Associates*, 137 Misc. 2d 218 (Sup. Ct. N.Y. Co. 1987).....................24

*Entertainment Partners Group, Inc. v. Davis*, 198 A.D.2d 63 (1st Dep't 1993)...........................23

*Frontier Group, Inc. v. Northwest Drafting & Design, Inc.*, 493 F. Supp. 2d 291
(D. Conn. 2007) ...............................................................................................6, 12

*Glosson v. Equifax Credit Information Services*, No. 5:95-CV-104
(E.D.N.C. Apr. 28, 1997) .........................................................................................1

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ....................................................15

*Gurda v. Orange County Publications Division of Ottaway Newspapers, Inc.*,
81 A.D.2d 120 (2d Dep't 1981) ............................................................................21

*H&R Project Associates, Inc. v. City of Syracuse*, 289 A.D.2d 967 (4th Dep't 2001).................19

*Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953
(N.D. Ill. 2002)........................................................................................................11

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ................................................23, 24

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000)...................19

*Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001)...................1, 9, 12

*Idema v. Fox News Network LLC*, No. BC 296228 (Los Angeles Super. Ct. Feb. 6, 2004)...........1

*Idema v. Fox News Network LLC*, No. BC 296228
(Los Angeles Super. Ct. July 18, 2005) .................................................................1

*Idema v. Wager*, 120 F. Supp. 2d 361 (S.D.N.Y. 2000) .......................................1, 2, 14

*Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291
(S.D.N.Y. 2007)..................................................................................................11, 12

*Ippolito v. Lennon*, 150 A.D.2d 300 (1st Dep't 1989)................................................18

*Ippolito v. Ono-Lennon*, 139 Misc. 2d 230 (Sup. Ct. N.Y. Co. 1988)..........................19

*Irwin v. ZDF Enterprises GmbH*, 2006 WL 374960 (S.D.N.Y. Feb. 16, 2006)...........................11

*Johnson v. Shearson Loeb Rhoades, Inc.*, 1984 WL 1028 (S.D.N.Y. Oct. 18, 1984) ...........22, 23

*Jones v. Maples/Trump*, 2002 WL 287752 (S.D.N.Y. Feb. 26, 2002) ...................................18, 19

*Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105 (1981) ..............................13

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992) ...................................................6

*Khan v. New York Times Co.*, 269 A.D.2d 74 (1st Dep't 2000)................................................23

*Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996)............................................................................19

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)...............................................20, 21

*Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118 (2d Cir. 2006).....................................7

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)................................................24

*Lemelson v. Kellogg Co.*, 440 F.2d 986 (2d Cir. 1971) .............................................................18

*Levin v. McPhee*, 917 F. Supp. 230 (S.D.N.Y. 1996)...............................................................13

*Los Angeles News Service v. Reuters Television International, Ltd.*, 149 F.3d 987
  (9th Cir. 1998)....................................................................................................................8

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592 (D. Md. 2002)........................12

*Lutin v. New Jersey Steel Corp.*, 1996 WL 636037 (S.D.N.Y. Nov. 1, 1996) .............................15

*Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153
  (S.D.N.Y. Apr. 10, 2003)..............................................................................................19, 20

*Mackason v. Diamond Financial LLC*, 347 F. Supp. 2d 53 (S.D.N.Y. 2004).................................6

*Madison River Management Co. v. Business Management Software Corp.*,
  351 F. Supp. 2d 436 (M.D.N.C. 2005) ................................................................................10

*Major League Baseball Properties, Inc. v. Opening Day Products, Inc.*,
  385 F. Supp. 2d 256 (S.D.N.Y. 2005).................................................................................13

*Manning v. Utilities Mutual Insurance Co.*, 254 F.3d 387 (2d Cir. 2001) ................................15

*Markogianis v. Burger King Corp.*, 1997 WL 167113 (S.D.N.Y. Apr. 8, 1997)...................17, 18

*Marks v. New York University*, 61 F. Supp. 2d 81 (S.D.N.Y. 1999) .........................................13

*Marvullo v. Gruner + Jahr AG & Co.*, 2001 WL 40772 (S.D.N.Y. Jan. 17, 2001)....................19

*Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523 (S.D.N.Y. 1985) ........................12

*Merck & Co. v. Lyon*, 941 F. Supp. 1443 (M.D.N.C. 1996)......................................................17

*Mobile Data Shred, Inc. v. United Bank of Switzerland*, 2000 WL 351516
  (S.D.N.Y. Apr. 5, 2000)......................................................................................................24

iv

*Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001)........................................7

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).........................8

*New York Times v. Sullivan*, 376 U.S. 254 (1964)........................................20

*Nickerson v. Communication Workers of America Local 1171*, 2005 WL 1331122
    (N.D.N.Y. May 31, 2005)........................................22

*Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273 (2d Cir. 1998) ........................................15

*Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659 (S.D.N.Y. 2007)........................................23

*Pelayo v. Celle*, 270 A.D.2d 469 (2d Dep't 2000)........................................21

*Phansalkar v. Andersen Wienroth & Co., L.P.*, 175 F. Supp. 2d 635 (S.D.N.Y. 2001)...............18

*Price v. Fox Entertainment Group, Inc.*, 473 F. Supp. 2d 446 (S.D.N.Y. 2007) .........................9

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ........................................24

*Reed v. Peterson*, 2005 WL 1522187 (N.D. Cal. Jun. 27, 2005)........................................12

*Reeves v. Continental Equities Corp. of America*, 767 F. Supp. 469 (S.D.N.Y. 1991)...............22

*Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005) ........................................12

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) ........................................8

*Sazerac Co. v. Falk*, 861 F. Supp. 253 (S.D.N.Y. 1994) ........................................20

*In re Scholastic Corp. Securities Litigation*, 252 F.3d 63 (2d Cir. 2001)........................................19

*Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836 (S.D.N.Y. 2000)........................................22

*Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053 (C.D. Cal. 2000)........................................10

*Solas v. Jones*, 2005 WL 525444 (S.D.N.Y. Mar. 7, 2005)........................................21

*Solondz v. Barash*, 225 A.D.2d 996 (3d Dep't 1996)........................................19

*Spencer Trask Software & Information Services LLC v. RPost International Ltd.*,
    383 F. Supp. 2d 428 (S.D.N.Y. 2003)........................................15, 16

*Spiegel v. Quality Bakers of America Cooperative*, 1992 WL 349799
(S.D.N.Y. Nov. 10, 1992) ........................................................................................19

*Stewart v. World Wrestling Federation Entertainment, Inc.*, 2005 WL 66890
(S.D.N.Y. Jan. 11, 2005) .........................................................................................17

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) ...........16, 17

*Time, Inc. v. Kastner*, 972 F. Supp. 236 (S.D.N.Y. 1997) .......................................................13, 14

*Treppel v. Biovail Corp.*, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ....................................22

*Value Time, Inc. v. Windsor Toys, Inc.*, 700 F. Supp. 6 (S.D.N.Y. 1988) ....................................15

*Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985) ............................................17

*Weinstein v. Friedman*, 1996 WL 137313 (S.D.N.Y. 1996) ........................................................13

*Wharton v. Columbia Pictures Industries, Inc.*, 907 F. Supp. 144 (D. Md. 1995) .........................9

*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir. 1989) .....................................7

*William Kaufman Organization, Ltd. v. Graham & James LLP*, 269 A.D.2d 171
(1st Dep't 2000) .....................................................................................................18

*Wolff v. Institute of Electrical & Electronics Engineers, Inc.*, 768 F. Supp. 66
(S.D.N.Y. 1991) .....................................................................................................10

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446 (6th Cir. 2001) ..................................................10

## OTHER AUTHORITY

Fed. R. Civ. P. 4 .........................................................................................................1

Fed. R. Civ. P. 8 .......................................................................................................22

Fed. R. Civ. P. 9 .................................................................................................15, 19

1-1 Nimmer on Copyright § 1.01 (Dec. 1997 rel.) ...................................................10

North Carolina Trade Practices Act (Chap. 75 N.C. Gen. Stat.) ...............................16

N.Y. C.P.L.R. § 74 ....................................................................................................21

17 U.S.C. § 102 ..........................................................................................................8

17 U.S.C. § 106..............................................................................................................9

17 U.S.C. § 301.........................................................................................................7, 11

17 U.S.C. § 411..............................................................................................................6

## PRELIMINARY STATEMENT

This action is part of a campaign against the news media by a self-proclaimed mercenary "commando," J.K. Idema, who was convicted of torture in Afghanistan in 2004. Idema has pursued similarly baseless claims against Fox News, CBS, Columbia Journalism Review and others.[1] Through this action, Idema and his alter ego, the Counter Terrorist Group US ("Counterr"), now set their sights on The Associated Press and Associated Press Television News, Inc. (collectively "AP") and their reporters in Afghanistan and Pakistan.[2] Like its predecessors, the Complaint against AP is wholly without merit and loaded with the same false vitriol that has caused courts repeatedly to dismiss Idema's claims and to assess sanctions.[3]

The instant Complaint advances various theories of liability for AP's alleged infringement of intellectual property rights in images of Idema, and accuses AP of defamation and related torts for reporting the (allegedly false) charges brought against Idema by the Afghan government. As demonstrated below, this Complaint should promptly be dismissed for a number of independent and equally dispositive reasons:

---

[1] *See, e.g.*, *Bennett v. Columbia Univ.*, No. BC345094 (Los Angeles Super. Ct. May 15, 2006) (dismissing libel claims based on reports of Idema's torture arrest and criminal past, and awarding attorney's fees to defendants) (attached as Exhibit B to the accompanying Declaration of David A. Schulz ("Schulz Decl.")); *Idema v. Fox News Network LLC*, No. BC 296228 (Los Angeles Super. Ct. Feb. 6, 2004) (dismissing tort and contract claims based on use of videotape and awarding defendants costs and attorney's fees) (Schulz Decl., Ex. C), *appeal dismissed*, No. B175323 (Cal. Ct. App. Jan. 28, 2005); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001) (dismissing claims that a movie was based on Idema's "life story"), *aff'd in part, appeal dismissed in part*, 90 Fed. App'x 496 (9th Cir. 2003); *Idema v. Wager*, 120 F. Supp. 2d 361 (S.D.N.Y. 2000) (dismissing claims based on description of Idema as a "militant"), *aff'd*, 29 Fed. App'x 676 (2d Cir. 2002).

[2] Named defendants Paul Haven, Stephen Graham, Jason Strazzio and Amir Shah, are AP reporters residing outside the United States. *See* Compl. ¶¶ 8-11. Plaintiffs have not yet effected proper service on any of the individual defendants. *See* FED. R. CIV. P. 4.

[3] *See supra* n.1; *see also Idema v. Fox News Network LLC*, No. BC 296228 (Los Angeles Super. Ct. July 18, 2005) (awarding attorneys' fees and expenses against Idema for discovery abuses) (Schulz Decl., Ex. D); *Glosson v. Equifax Credit Info. Servs.*, No. 5:95-CV-104 (E.D.N.C. Apr. 28, 1997) (imposing Rule 11 sanctions against Idema "in the amount of reasonable costs and fees incurred by defendant") (Schulz Decl., Ex. E), *aff'd sub nom. Idema v. Equifax Credit Info. Servs.*, 1998 WL 879024 (4th Cir. 1998).

- The Complaint fails to state a cause of action for copyright infringement because it makes no claim that plaintiffs hold the registration to any original work.

- Other theories of liability advanced for AP's allegedly unauthorized use of photographs and images are all preempted by the Copyright Act and, in any event, fail to state any viable claim as a matter of law.

- The Complaint fails to state a cause of action for defamation because it identifies no false statement made about Counterr and because any claims based on the allegedly false statements about Idema are time-barred.

- The tag-along claims for other torts based upon the same alleged dissemination of false facts are precluded at common law, prohibited by the First Amendment, and not adequately pled.

Because the defects in the claims being advanced are in critical respects incurable, the Complaint should be dismissed with prejudice.

## THE COMPLAINT

AP assumes (as it must) that the allegations in the Complaint are true, solely for purposes of this motion.  *See Idema v. Wager*, 120 F. Supp. 2d at 365.

### A.    The Parties

Plaintiff Counterr is "a North Carolina company engaged in the support of US counter-terrorist initiatives."  Compl. ¶ 4.  Plaintiff Idema was "formerly employed by" Counterr to work in Afghanistan and is currently "residing in New York."  *Id.* ¶ 5.  Defendant Associated Press is the nation's largest newsgathering organization.  *Id.* ¶ 6.  It operates as a New York not-for-profit news cooperative with its headquarters in New York City.  *Id.* ¶¶ 6, 13.  Defendant Associated Press Television News, Inc. (improperly named in the Complaint as "Associated Press TV News") is "the international television division" of AP.  *Id.* ¶ 7.

### B.    Alleged Basis for the Claims Asserted

In the 1980s, following the Soviet invasion of Afghanistan, Idema and Counterr "assisted" in unspecified ways the Afghan fighters known as the "Northern Alliance."

Compl.¶ 14.  After the assassination of the Northern Alliance's military leader in September 2001, Idema "joined" with Alliance forces, initially as a fighter and continuing later as a consultant.  *Id.* ¶ 15.  Later, after the U.S. invasion, Idema's "team" in 2004 became "officially employed by the Ministry of Defense or Afghan CIA" in operations against a "growing terrorist resistance."  *Id.* ¶ 71.

On July 5, 2004, Idema was arrested by the Afghan government and charged with "'running a torture chamber,' 'torturing innocent Afghans' and 'other illegal conduct.'" *Id.*, ¶ 74.[4]  Idema alleges that his prosecution was orchestrated by Afghanistan's Interior Minister and others to "prevent the exposure of a plot to assassinate Hamid Karzai's primary political opponents who were former U.S. allies."  *Id.*  At the time of his arrest, information concerning the charges against Idema was released to the public by the Interior Minister and reported by AP. *Id*. ¶¶ 74-75.  Idema stood trial in an Afghan court, where he was convicted of torture.  *Id.* ¶ 23. In June 2007, after serving nearly three years in jail, Idema was released.  *Id.* ¶ 90.

While he was preparing to stand trial, Idema was interviewed in August 2004 by two AP reporters who wanted to "publish the truth" about Idema's prosecution.  *Id.* ¶ 19.  During the course of this interview, Idema refused to allow his photo to be taken, but told the AP reporters that images of him and his activities in Afghanistan could be licensed "from plaintiffs' photo agency, Polaris Images in New York."  *Id.* ¶ 20.  Idema "told the entire press corps" the same thing.  *Id.* ¶ 25.  The AP reporters in Afghanistan allegedly agreed that "any photographs or

---

[4] Idema avers in the Complaint only that he was "captured by Karzai government forces" while engaged in "anti-terrorist operations."  Compl. ¶ 16.  However, Idema concedes in a habeas corpus petition that he was arrested, tried and convicted of torture by the Afghan government.  *Idema v. Rice*, No. 05 CV 2947 (S.D.N.Y. Mar. 17, 2005), Verified Petition for Writ of Habeas Corpus at 29, ¶ 41 n.22 (Schulz Decl., Ex. A) (Idema among three Americans who "were *convicted of* running a private prison, illegally arresting and *torturing* suspected terrorists") (emphasis added).  This Court may take notice on a motion to dismiss of Idema's judicial admission.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

videos or photographs made from videos" owned by plaintiffs "would be licensed through Polaris Images." *Id.* ¶ 21.

In September 2004, in the midst of his trial, Idema prepared a videotape specifically "for release to the press," referred to in the Complaint as the "*Task Force Saber Videotapes*" or the "*Saber 7 Videotapes*." *Id.* ¶¶ 24-25, 29. This videotape was handed out by Idema's lawyer to AP's reporters and others covering the case. *Id.* ¶ 29. The videotape contained film clips of events and evidence Idema said would prove his innocence. *Id.* ¶ 24. Notwithstanding that the videotape was prepared specifically to make public Idema's version of events, and that it was handed out – unsolicited – to all reporters covering the trial, AP allegedly agreed at the time that the video would be considered "off the record" and understood its images could not be used in any reporting without a "proper license from Polaris Images." *Id.* ¶ 29; *see also id.* ¶¶ 25-26.

Following Idema's conviction, AP reporters again met with him, but Idema claims that he declined to be interviewed because he did not want to "reveal additional evidence" that might be used at a second trial. *Id.* ¶ 27. Nevertheless, Idema says he questioned the reporters about stories he had seen repeating the charges that he had "hung innocent Afghan men upside down in a basement and tortured them" – charges Idema said were false. *Id.* The AP reporters allegedly denied knowing who wrote the stories and agreed the accusation was "obviously false" because Idema's house had no basement. *Id.*

Idema claims he obtained "copies of the original articles" only "years later," at which time he supposedly learned that it was the AP reporters who had "fabricated" the report of men hanging upside down based entirely on anonymous sources, including one who is "non-existent." *Id.* ¶ 28. Idema also claims to have "first learned" in August 2005 that AP was distributing

images owned by plaintiffs without a license to do so, *id.* ¶ 34, and has repeatedly violated the agreement not to use plaintiffs' images without permission, *id.* ¶¶ 38, 41-49.

### C.    The Eleven Claims Asserted Against AP

Based on these factual allegations, the Complaint seeks damages and injunctive relief under eleven overlapping theories of liability, all arising out of AP's reporting on Idema's prosecution. Eight claims are based on AP's allegedly unauthorized use of certain photos and videos. The Complaint asserts that AP distributed without permission three photographs of Idema following his arrest in 2004. *Id.* ¶ 49. It further avers that AP used images from the "*Saber 7 Videotape*" without obtaining a license. *Id.* ¶¶ 41-48. The Complaint asserts that AP's use of these materials infringed plaintiffs' copyrights (¶¶ 148-50), and constitutes a breach of contract (¶¶ 95-99), breach of confidence (¶¶ 137-39), and conversion (¶¶ 140-41). The Complaint further claims that AP's conduct in obtaining the images constituted fraud (¶¶ 115-20), negligent misrepresentation (¶¶ 143-47), unfair and deceptive trade practices (¶¶ 121-25), and a civil conspiracy among AP and its own employees (¶¶ 110-114).

Three other causes of action – defamation, tortious interference with contract, and tortious interference with prospective economic advantage – are based on allegedly false statements made in various AP news reports about Idema's prosecution and conviction for torture. *Id.* ¶¶ 130-33. These "false reports" were published in 2004 and subsequently "repeated time and again by other news agencies." *Id.* ¶ 135. According to the Complaint, the false statements injured plaintiffs' reputations and caused damage to their existing and future business relationships. *See id.* ¶¶ 126-136 (defamation); ¶¶ 100-106 (tortious interference with prospective advantage); ¶¶ 107-109 (tortious interference with contract). At their essence, the claims for tortious interference assert that AP knew of plaintiffs' many "economic relationships

with each of the major US news networks, and numerous foreign news networks," and sought to disrupt those relationships by publishing "false and unsupported statements" with reckless disregard for the truth. *Id.* ¶¶ 101, 104.

The allegations against AP fail to state any cause of action and should be dismissed at the outset, with prejudice, as will now be demonstrated.

## ARGUMENT

I.  **THE COMPLAINT FAILS TO STATE ANY CLAIM BASED ON AP'S USE OF IMAGES ALLEGEDLY OWNED BY PLAINTIFFS**

   A.  **The Complaint Fails to State A Claim for Either Direct or Contributory Copyright Infringement**

The Copyright Act provides that no action for infringement "shall be instituted until . . . registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  Registration is both a substantive pleading requirement, *see, e.g.*, *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 37 (S.D.N.Y. 1992), and a jurisdictional prerequisite – there is no subject matter jurisdiction under the Copyright Act absent an allegation that the work has been registered with the Copyright Office.[5]  *See Conan Props., Inc. v. Mattel, Inc.*, 601 F. Supp. 1179, 1182

---

[5] The Complaint asserts the existence of diversity jurisdiction, Compl. ¶ 2, but fails to establish that diversity exists:  AP is organized and located in New York, *id.* ¶ 6, while Idema "resides" in New York and Conterr is a "North Carolina company." *Id.* ¶¶ 4, 5.  The allegation of Idema's residence is "insufficient to establish diversity jurisdiction," *Mackason v. Diamond Fin. LLC*, 347 F. Supp. 2d 53, 55 (S.D.N.Y. 2004), as is the allegation that Conterr is a North Carolina "company" – the citizenship of an unincorporated entity is determined by the citizenship of its members. *Id.*  Because the Complaint fails to allege either the nature of Counterr's legal existence or the citizenship of its members, it fails to establish the existence of diversity jurisdiction. *E.g.*, *Advani Enters., Inc. v. Underwriters of Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998).

The Court does, however, possess limited federal question jurisdiction under the doctrine of "complete preemption" to determine whether the state law claims alleged by plaintiffs are preempted under the Copyright Act, and it may exercise supplemental jurisdiction over the remaining claims.  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *Frontier Group, Inc. v. Northwest Drafting & Design, Inc.*, 493 F. Supp. 2d 291, 296-97 (D. Conn. 2007).  Under the circumstances, should the Court conclude that the Complaint contains any well-pleaded, non-preempted cause of action, it should decline to continue to exercise supplemental jurisdiction over the purely state law claims advanced

(S.D.N.Y. 1984) (allegation of registration is not "a mere technicality," but rather "a prerequisite to this court's jurisdiction"); *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 72 (2d Cir. 2001) (no subject matter jurisdiction where copyright plaintiff fails to allege registration of the work).

Because plaintiffs do not claim to hold any registered copyright, their claims for direct and contributory infringement, Compl. ¶¶ 148-150, must be dismissed. *See, e.g.*, *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir. 1989) ("proper registration is a prerequisite to an action for infringement").

### B.    Plaintiffs' Other Claims Arising From AP's Alleged Use of Their Images Are All Preempted

Plaintiffs assert various state law claims arising from AP's alleged use of certain images without permission. Compl. ¶¶ 95-125, 137-47. Central to all of these claims is the allegation that AP "repeatedly distributed pictures and video belonging to Plaintiffs." *Id.* ¶ 41. Because these claims seek redress for harm allegedly resulting from the unauthorized distribution of copyrightable subject matter, the claims are preempted by the Copyright Act.

Section 301 of the Copyright Act provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed *exclusively* by this title . . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added). The Copyright Act expressly preempts state law claims because it is the Act's purpose to codify all rights within the subject matter of copyright under federal law, including the right to copy and distribute works of authorship. *See, e.g.*, *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (Copyright Act creates uniform law

---

by plaintiffs. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims'") (citation omitted).

"by broadly pre-empting state statutory and common-law copyright regulation").  The states are precluded from enforcing any analogous rights.  *See, e.g.*, *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir. 1997).

Copyright preemption applies when (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act," and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law."  *Briarpatch Ltd.*, 373 F.3d at 305.  A claim is preempted unless it includes an extra element that makes it "qualitatively different from a copyright infringement claim," and the Second Circuit has taken "a restrictive view of what extra elements transform an otherwise equivalent claim."  *Id.* at 305-06; *accord Nat'l Basketball Ass'n*, 105 F.3d at 851 (test does not "allow state claims to survive preemption easily").  The essential questions in deciding whether an extra element exists are "'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'"  *Briarpatch Ltd.*, 373 F.3d at 306 (citation omitted); *ABC v. Flying J, Inc.*, 2007 WL 583176, at *10 (S.D.N.Y. Feb 22, 2007) (Batts, J.) (same).

Copyright preemption plainly applies in this case.  The images at issue fit squarely within the types of works protected by the Copyright Act.  *See* 17 U.S.C. § 102(a) (subject matter includes "pictorial, graphic, and sculptural works" as well as "motion pictures and other audiovisual works"); *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992) (photos); *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998) (videotape).  And, the state law claims arising out of AP's alleged use of the images seek to vindicate rights that are equivalent to rights protected by the Copyright Law.  They all seek remedies for "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law," and are

8

therefore preempted. *Briarpatch Ltd.*, 373 F.3d at 305; *see, e.g.*, *Idema v. Dreamworks*, 162 F.

Supp. 2d at 1193-94 (tortious interference, fraud, conspiracy, breach of confidence, negligent

misrepresentation, conversion, and unfair trade practices claims all preempted); *Wharton v.*

*Columbia Pictures Indus., Inc.*, 907 F. Supp. 144, 146 (D. Md. 1995) (fraud, conspiracy, tortious

interference, and contract claims all preempted); *Price v. Fox Entm't Group, Inc.*, 473 F. Supp.

2d 446, 461 (S.D.N.Y. 2007) (contract and conversion claims preempted).

### 1.        The breach of contract claims are preempted.

Plaintiffs assert two claims for breach of alleged oral agreements.  One asserts AP's

breach of a promise to license photographic images from plaintiffs' agent, Compl. ¶¶ 95-99,

while the other claims AP breached an agreement to hold videotape images "in confidence until

such times as they were properly licensed for broadcast," *id.* ¶¶ 31, 137-39.[6]  The essence of both

claims is that AP breached oral promises that it "would not attempt to use or print or distribute

any images which belonged to plaintiffs" without arranging for valid licenses.  *Id.* ¶¶ 20-21, 26,

29, 38, 41, 44, 46, 50.

The only term of either purported agreement set forth in the Complaint is AP's alleged

promise not to copy or distribute images without a license – *i.e.*, not to infringe exclusive rights

set forth in the Copyright Act.  *See* 17 U.S.C. § 106 (exclusive rights under the Act include the

right to "reproduce the copyrighted work" and "distribute copies").  In other words, "the claim

seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive

rights already protected by copyright law."  *Briarpatch,* 373 F.3d at 305.

---

[6] The Complaint characterizes this breach of this second agreement a "breach of confidence" rather than a breach of contract.  Compl. ¶ 31 (Eighth Claim); *see, infra*, pp. 17-18.  However it is labeled, the claim is preempted because it seeks only to protect rights equivalent to those protected by the Copyright Act.

Because the only term at issue is an alleged promise not to use without permission, the claim is preempted.  For example, in *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996), plaintiff sued for the breach of a licensing agreement after defendant exhibited a film over which plaintiff had exclusive distribution rights.  This Court confirmed that "a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution or display)."  *Id.* at 931; *see also, e.g.*, *Madison River Mgm't Co. v. Bus. Mgm't Software Corp.*, 351 F. Supp. 2d 436, 444 (M.D.N.C. 2005) (contract claim alleging wrongful reproduction and distribution preempted); *Wolff v. Inst. of Elec. & Elec. Eng'rs, Inc.*, 768 F. Supp. 66, 69 (S.D.N.Y. 1991) (contract claim preempted).[7]

So also here, plaintiffs' breach of contract is based solely on allegations that AP copied and distributed images without first obtaining a license.  There is no "extra element" that secures any right that is "qualitatively different" from those protected by the Copyright Act – plaintiffs' contract claims are "a subterfuge to control nothing other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright."  *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061 (C.D. Cal. 2000) (quoting 1-1 NIMMER ON COPYRIGHT § 1.01[B][1][a], at 1-19 & 1-22 (Dec. 1997 rel.)); *see also Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) ("a promise to refrain from reproducing, performing, distributing or displaying the work" is preempted).  The claims are thus preempted.

---

[7] Many contract-based claims are not preempted, such as those alleging the failure to pay an agreed upon fee. *E.g.*, *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 438-41 (S.D.N.Y. 1996) (no preemption of agreement to pay a royalty).  Here, however, plaintiffs make no claim that AP breached a promise to pay a particular license fee, only that it promised not to distribute without permission.

2. **All other state law claims are preempted.**

The doctrine of preemption applies equally to common law and statutory claims that seek

damages for the allegedly unauthorized use of original works of authorship.  17 U.S.C. § 301(a).

Plaintiffs allege a number of such alternative theories of liability, but the wrongful conduct

alleged in each is the same:  AP allegedly used Idema's photographs and images in its news

reporting without permission.   The Complaint asserts:

- A claim for civil conspiracy (Count Four), the ostensible purpose of which was to "exercise dominion and control over property to which AP had no rights and deprive Plaintiffs of income derived from [the images]."  Compl. ¶ 112.

- Fraud (Count Five) committed by promising to license the photographs and videotape from Polaris without intending to do so.   *Id.* ¶¶ 30; 115-19.

- A violation of the North Carolina law prohibiting unfair and deceptive trade practices (Count Six) by "wrongfully usurp[ing] and depriv[ing] Plaintiffs of their *Task Force Saber Videotapes* and assum[ing] the financial benefits of Plaintiffs' videos for AP'[s] own use."  *Id.* ¶ 122.

- A "breach of confidence" (Count Eight) by violating an agreement not to use various videotape images "obtained in confidence," without a license.  *Id.* ¶ 138.

- Conversion (Count Nine) that occurred when AP allegedly "used Plaintiffs' proprietary images and video and distributed these images to third parties for their own profit and benefit."  *Id.* ¶ 141.

- Negligent misrepresentation (Count Ten) based on allegedly fraudulent statements regarding AP's intent to refrain from unlicensed use of the images.  *Id.* ¶¶ 143-47.

Courts have not hesitated to find preemption of these very claims when, as in this case,

they were advanced solely to recover for the alleged misuse of an original work of authorship.

*See, e.g.*, *Irwin v. ZDF Enters. GmbH*, 2006 WL 374960, at *4-6 (S.D.N.Y. Feb. 16, 2006)

(conspiracy and unfair competition claims preempted); *Higher Gear Group, Inc. v. Rockenbach*

*Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959-60 (N.D. Ill. 2002) (tortious interference and

conspiracy claims preempted); *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476

F. Supp. 2d 291, 296 (S.D.N.Y. 2007) (unfair competition claim preempted);[8] *Flying J, Inc.*, 2007 WL 583176, at *11 (unfair competition claim preempted); *Reed v. Peterson*, 2005 WL 1522187, at *6 (N.D. Cal. Jun. 27, 2005) (unfair trade practices claim preempted); *Lowry's Reports*, 186 F. Supp. 2d at 595 (fraud claim preempted); *DirecTV*, 2004 WL 1622229, at *4 (claims for fraud and deception preempted); *Price*, 473 F. Supp. 2d at 461 (conversion claim preempted); *Frontier Group, Inc.*, 493 F. Supp. 2d at 298-301 (conversion and unfair trade practices claim preempted); *see also Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1534-35 (S.D.N.Y. 1985) (collecting cases holding to be preempted state law torts including conversion, tortious interference and unfair competition).  Not surprisingly, similar claims brought previously by Idema have been squarely rejected on preemption grounds.  *See Idema v. Dreamworks*, 162 F. Supp. 2d at 1193-94 (finding claims for civil conspiracy, deceptive trade practices under North Carolina law and tortious interference to be squarely "preempted by copyright").

The same result is required here.  All of plaintiffs' claims arising out of the alleged use of photographs and images by AP are preempted because they seek to recover damages for rights equivalent to those protected by the Copyright Act, and nothing more.

---

[8] *Integrative Nutrition* holds that some fraud claims are not preempted because they contain the extra element of "intentional deception."  Here, the only alleged deception is that AP never intended to keep its purported promise not to use the images without a license.  Compl. ¶ 30.  This simply recasts as a tort the claims for breach of contract and fails to provide the extra element required to avoid preemption.  *See Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005) (Copyright Act preempts misrepresentation claim "arising from the same set of transactions" as preempted contract claim); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592, 595 (D. Md. 2002) (Copyright Act preempts fraud claim that plaintiff was "cheated out of money it would have made had it been paid for the activities of copying and distribution"); *DirecTV, Inc. v. Cashe*, 2004 WL 1622229, at *4 (S.D. Ind. Jun. 7, 2004) (finding claims for fraud and deception preempted).  As the Second Circuit has held, "an action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature.'" *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (citation omitted).

C.    **The Complaint Fails to State Any Claim Based
      <u>Upon the Alleged Misuse of Plaintiffs' Images</u>**

Even if these contract and other state law claims were not preempted, they should

nevertheless be dismissed because each is insufficient as a matter of law.[9]

1.    <u>**The Complaint fails to state a claim for breach of contract.**</u>

For all of its references to "agreements," the Complaint does not allege facts sufficient to

state a claim for breach of contract. *E.g.*, Compl. ¶ 96 ("Plaintiffs and Defendants had a series of

valid contracts and implied contracts"). At most, it alleges an unenforceable agreement to agree.

It is axiomatic that a breach of contract claim requires "the existence of a contract,"

*Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999), and for such a contract to exist

"the salient terms must be set forth in sufficient detail so that the parties' intention may be

ascertained with a reasonable degree of certainty," *Time, Inc. v. Kastner*, 972 F. Supp. 236, 239

(S.D.N.Y. 1997). Because "definiteness as to material matters is of the very essence in contract

law," it is well settled that "a mere agreement to agree, in which a material term is left for future

negotiations, is unenforceable." *Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d

105, 109 (1981) ("uncertainty will not do"); *see also Major League Baseball Props., Inc. v.

Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) ("a future agreement to

agree on compensation is too indefinite for enforcement"); *Time Inc.*, 972 F. Supp. at 239

---

[9] To the extent any conflict exists, New York law governs the state law claims asserted. Both Idema and
AP are residents of New York, and the alleged wrongful dissemination of the AP news reports occurred in
New York. Under New York's "most significant relationship" analysis, New York law applies,
particularly given the state's strong interest in regulating its residents' actions. *See, e.g.*, *Levin v.
McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996) (applying New York law when publication "took place
in New York," the publisher was headquartered in New York, events reported occurred in Russia, and
plaintiff was a Russian dissident domiciled in Washington), *aff'd*, 119 F.3d 189 (2d Cir. 1997); *Weinstein
v. Friedman*, 1996 WL 137313, at *5-6, *8-9 (S.D.N.Y.) (applying New York law where plaintiff was a
citizen of United States and Israel, domiciled in Israel, "principal activities of [plaintiff] to which the
alleged defamation relate[d] took place in Princeton, New Jersey, and in Israel," defendants were New
York corporations, and articles were published "nationwide"), *aff'd*, 112 F.3d 507 (2d Cir. 1996).

(contract that does not have "such essential terms as the time or manner of performance or price to be paid" is unenforceable).

Such an unenforceable agreement to agree is all the Complaint presents.  Plaintiffs allege two "agreements" by AP:  an August 2004 agreement that AP "would" license through Polaris Images "any photographs or videos or photographs made from videos" it decided to use, Compl. ¶¶ 20-21, and a later agreement to hold "in confidence" the *Saber 7 Videotapes* (provide by Idema unsolicited to all reporters) until a license to use them was obtained, *id.* ¶¶ 24, 25, 31. Neither alleged agreement contained such material terms as the length of the contract, the geographic scope of the license, or the price to be paid – terms left for future negotiation.  All apart from their preemption, the contract claims are inadequate as a matter of law.

### 2.    The Complaint fails to state a claim for civil conspiracy.

The Complaint alleges that AP "and their agents and employees" conspired to engage in "wrongful conduct."  Compl. ¶ 111.  As this Court has previously instructed Idema, "New York recognizes no independent cause of action for civil conspiracy," and "putting [on] a 'conspiracy' label" cannot revive otherwise "flawed" claims.  *Idema v. Wager*, 120 F. Supp. 2d at 369. Moreover, even if such a cause of action existed, it is black-letter law that "'corporate officers and employees cannot conspire with their own employer.'"  *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 285 (E.D.N.Y. 2002) (citation omitted).  In this case, the alleged "conspiracy" is entirely between AP and its own agents and employees.  *See, e.g.*, Compl. ¶ 111.

### 3.    The Complaint fails to state a claim for fraud.

The Complaint asserts that AP "repeatedly made false statements and assurances and Plaintiffs relied on those statements and assurances to their detriment and loss."  Compl. ¶ 116. The only assurances alleged are:  (1) an assurance by AP's reporters that "they had not used any

14

of his materials or images" and "their stories had been favorable"; and (2) an assurance by "Associated Press agents" that AP would not "re-sell or distribute ANY of plaintiffs proprietary materials." *Id.* ¶¶ 22-23, 30.  These allegations do not (and cannot) state a fraud claim.

First, "'a cause of action for fraud will not arise when the only fraud charged relates to a breach of contract.'"  *Value Time, Inc. v. Windsor Toys, Inc.*, 700 F. Supp. 6, 7 (S.D.N.Y. 1988) (citation omitted).  Stated differently, a fraud claim does not lie merely because a "defendant never intended to perform the precise promises spelled out in the contract between the parties." *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 453 (S.D.N.Y. 2003).  That is all the Complaint alleges.  The fraud claim is founded on AP's alleged assurance that it would not use or distribute plaintiffs' images without a license; it is no more than an assertion that AP breached an agreement it had no intention of honoring.  Compl. ¶ 30.

Second, the vague allegations of fraud fail to comply with the specificity requirements of Federal Rule 9(b).  *See Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998).  Here, plaintiffs fail to plead two necessary elements with particularity – justifiable reliance on a misrepresentation and injury.  *See Guilbert v. Gardner*, 480 F.3d 140, 147 n.5 (2d Cir. 2007).  A vague allegation of "reliance" is not sufficient for purposes of Rule 9(b).  *Creditsights, Inc. v. Ciasullo*, 2007 WL 943352, at *11 (S.D.N.Y.  Mar. 29, 2007) (Batts, J.) (reasonable reliance must be pled with specificity).  Thus, in *Lutin v. New Jersey Steel Corp.*, 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996), this Court dismissed with prejudice a fraud claim alleging that plaintiffs had "justifiably relied" on the alleged fraudulent misrepresentations without offering factual support for the claim.  *See also Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400-01 (2d Cir. 2001) (affirming dismissal of fraud claim where no detrimental reliance was alleged).

Plaintiffs' bare assertion that Idema "would have acted differently" had he known the true facts, Compl. ¶ 22, does not meet their heightened pleading obligations.

Nor is the bald statement that fraud "resulted in damage" sufficient to plead the element of harm.  To state a claim for fraud, a plaintiff must specifically allege "the pecuniary or *out-of-pocket loss* sustained as a result of the defendants' alleged misrepresentations."  *Spencer Trask Software*, 383 F. Supp. 2d at 455 (emphasis added).  The Complaint fails to do so.  It does not identify any out-of-pocket losses that resulted from the alleged fraud, asserting only that Idema "would have acted differently" and that "as a direct and proximate result of AP'[s] fraudulent misrepresentations Plaintiffs have suffered damages in excess of $10,000."  Compl. ¶¶ 22, 120. Even if one inferred that Idema lost business from other potential licensors of his intellectual property, such prospective loss would not suffice to support a claim for fraud.  *Spencer Trask Software*, 383 F. Supp. 2d at 457.

**4.      The Complaint fails to state a claim for unfair trade practices.**

The claim for "unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes," Compl. ¶ 124, should be dismissed because the Complaint's allegations provide no nexus to North Carolina.  Other than stating that Counterr is "located in Cumberland County, NC," the Complaint mentions no connection to North Carolina.  *Id*. ¶ 4. Moreover, while Counterr may be located in North Carolina, it is not alleged to hold any copyrights in the images used by AP or to be a party to the alleged agreements or the tortious transactions alleged in the Complaint.

Further, in order to assert a claim under the North Carolina Trade Practices Act, a defendant's challenged activity must have "a *substantial* effect on plaintiff's in-state [business] operations."  *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C.

16

1987).  When a plaintiff will suffer only incidental injury in North Carolina, its claim is beyond the reach of the Act.  *See Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996).  There is no allegation of any substantial impact on the business of either plaintiff in North Carolina.

Further still, allegations that amount to nothing more than a breach of contract are not cognizable under the North Carolina statute.  *See, e.g.*, *Boyd v. Drum*, 129 N.C. App. 586, 593 (1998), *aff'd*, 350 N.C. 90 (1999).  Yet, the claim in this case is based entirely on plaintiffs' contention that AP breached various agreements by failing to license images.

**5.    The Complaint fails to state a claim for breach of confidence.**

The Complaint asserts that AP agreed not to use the *Saber 7 Videotape* without obtaining a license to do so, and labels the breach of this agreement a "breach of confidence," conflating tort and contract terminology.  A tort claim for breach of confidence could only exist if AP owed a fiduciary duty to plaintiffs, and no such fiduciary duty is alleged.  *Stewart v. World Wrestling Fed'n Entm't, Inc.*, 2005 WL 66890, at *4 (S.D.N.Y. Jan. 11, 2005) ("a confidential relationship is 'synonymous with a fiduciary relationship'") (citation omitted).  Courts repeatedly have rejected claims that a defendant with no prior position of trust with respect to the plaintiff assumed fiduciary duties simply by promising not to take or use copyrighted material.  *See, e.g.*, *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434, 440-41 (S.D.N.Y. 1985) (no confidential relationship created by promise not to copy plaintiff's manuscript where there was no preexisting fiduciary relationship), *aff'd*, 784 F.2d 44 (2d Cir. 1986); *Markogianis v. Burger King Corp.*, 1997 WL 167113, at *4 (S.D.N.Y. Apr. 8, 1997) (no breach of confidence claim where parties were complete strangers prior to defendants agreement to confidentiality and nondisclosure of plaintiff's copyrighted works).

Nor does the Complaint allege that the plaintiffs acted in any way to keep the widely-distributed materials at issue confidential,[10] which itself defeats any claim for breach of confidence. *Markogianis*, 1997 WL 167113 at *4. The Complaint states no tort claim for breach of confidence.

Moreover, "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173 (1st Dep't 2000). Such is the case here, where the alleged breaches of contract and confidence are identical, arising from the same purported agreement not to use plaintiffs' images without first obtaining a license.

**6.    The Complaint fails to state a claim for conversion.**

A claim for conversion requires "the 'unauthorized and wrongful exercise of dominion and control over another's personal property,'" and "'a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *Phansalkar v. Andersen Wienroth & Co., L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) (citations omitted); *accord, e.g.*, *Ippolito v. Lennon*, 150 A.D.2d 300, 302-03 (1st Dep't 1989) (no "cause of action for conversion of intangible property"). The Complaint does not seek damages for AP's confiscation of the physical media containing the images at issue, but rather for AP's use and distribution of "Plaintiffs' proprietary images and video." Compl. ¶ 141. No claim for conversion of this intangible property exists. *See Ippolito*, 150 A.D.2d at 301-02 (no conversion claim for distribution of video and audio footage of musical performance); *Jones v. Maples/Trump*, 2002 WL 287752, at *11-12 (S.D.N.Y. Feb. 26, 2002) (no claim for conversion

---

[10] In this regard, a breach of confidence claim is flatly inconsistent with a claim for copyright infringement. "'The case law is abundantly clear that there is no cause of action for the use of an idea claimed to have been communicated in confidence when that idea has been made public by the issuance of a copyright or patent prior to its use.'" *Markogianis*, 1997 WL 167113, at *4 (citation omitted); *see also Lemelson v. Kellogg Co.*, 440 F.2d 986, 987-88 (2d Cir. 1971)

of intellectual property), *aff'd*, 71 Fed. App'x 873 (2d Cir. 2003); *Spiegel v. Quality Bakers of Am. Coop.*, 1992 WL 349799, at *7 (S.D.N.Y. Nov. 10, 1992) (license to use trademark is "intangible property" that cannot be "converted").[11]

### 7.    The Complaint fails to state a claim for negligent misrepresentation.

The claim for negligent misrepresentation is equally deficient for three reasons.  First, a negligent misrepresentation claim requires that the "the defendant had a duty, as a result of a special relationship, to give correct information."  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  "A 'special relationship' requires a closer degree of trust than an ordinary business relationship."  *Solondz v. Barash*, 225 A.D.2d 996, 998 (3d Dep't 1996); *see H&R Project Associates*, 289 A.D.2d 967, 968 (4th Dep't 2001); *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263-65 (1996) (professionals such as attorneys, engineers, and accountants held in special relationship with clients).  There is nothing in the Complaint to suggest the parties had anything other than an arms-length relationship.

Second, "[n]egligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard."  *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003).  This requires a plaintiff to plead with particularity "the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent, specifying who made them, and where and when they were made."  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69-70 (2d Cir. 2001).  The Complaint states only vaguely that "[t]he bulk of the statements made by Defendants constituted fraud, [but] other statements, and

---

[11] The absence of any cognizable claim for conversion of intellectual property rights is also compelled by the statutory preemption contained in the Copyright Act. *E.g.*, *Ippolito v. Ono-Lennon*, 139 Misc. 2d 230, 237-38 (Sup. Ct. N.Y. Co. 1988) (claim for conversion of rights in a performance is equivalent to rights protected by the Copyright Act and thus preempted), *aff'd on other grounds*, 150 A.D.2d 300 (1st Dep't 1989); *Marvullo v. Gruner + Jahr AG & Co.*, 2001 WL 40772, at *6 (S.D.N.Y. Jan. 17, 2001) (same for claim of conversion of photographs).

those falling outside intentional fraud and/or constructive fraud, were negligent misrepresentations." Compl. ¶ 144. Such a "vague and generic allegation" requires dismissal because it "does not put the defendant on sufficient notice of the claim, *i.e.* the who, what, why, where and when." *Maalouf*, 2003 WL 1858153, at *4.

Third, the Complaint fails to allege how plaintiffs relied on the unspecified negligent statements to their detriment. Compl. ¶¶ 143-47. This, too, is an essential element whose absence warrants dismissal. *See, e.g.*, *Sazerac Co. v. Falk*, 861 F. Supp. 253, 260 (S.D.N.Y. 1994) (dismissing claim where plaintiff had "not alleged any factual basis in support of its allegations that it reasonably relied on the Defendants' alleged misrepresentations").

## II.    THE COMPLAINT FAILS TO STATE ANY CLAIM BASED UPON ALLEGEDLY FALSE STATEMENTS IN AP'S NEWS REPORTS

The Complaint advances three tort claims – one for defamation and two for tortious interference – based upon the allegation that AP's news reports about Idema's conviction for torture repeated "false accusations." Each of these claims is deficient as a matter of law.

### A.    The Complaint Fails to State Any Claim For Defamation

#### 1.    The alleged defamation is not "of and concerning" Counterr.

Unless the challenged statement is "of and concerning the plaintiff," no cause of action will lie. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006); *see Idema v. Wager*, 120 F. Supp. 2d at 365. This limitation is both a common law prerequisite and a constitutional imperative. *New York Times v. Sullivan*, 376 U.S. 254, 288-292 (1964) (libel verdict for statement that did not refer to plaintiff held "constitutionally defective"); *Kirch*, 449 F.3d at 400 n.3 (the "of and concerning" requirement protects "freedom of speech and of the press").

The Complaint alleges that AP made defamatory statements "of and concerning" Idema and two other named individuals, but says not one word about Counterr. Compl. ¶ 130; *see id.*

¶¶ 126-36.  Because the Complaint does not assert any false statement made about Counterr, the defamation claim on its behalf must be dismissed.  *See Kirch*, 449 F.3d at 397; *see also Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885 (1982) (dismissing claim by company "never mentioned" in report).

### 2.    The alleged defamation of Idema is time-barred.

Idema's claim for defamation is based upon the allegation that AP published a number of false and defamatory statements about him while reporting on his prosecution in Afghanistan. Specifically, the Complaint asserts that AP published the Afghan Interior Ministry's fabricated allegations that Idema was "'running a torture chamber,' 'torturing innocent Afghans,' and other illegal conduct."  Compl. ¶ 74.  The Complaint alleges that AP published these "completely false" accusations in 2004, knowing they were false.  *Id.* ¶¶ 68, 77, 83.

All apart from the fact that reporting on any such accusations is protected under the fair report privilege,[12] the claims for defamation based on statements made more than three years ago are time-barred under New York's one-year statute of limitations.  CPLR § 215(3); *Solas v. Jones*, 2005 WL 525444, at *2 (S.D.N.Y. Mar. 7, 2005) (statute of limitations runs from "the date that the defamatory statement is published, not from when a claimant first learns of the statement").  The Complaint was filed on July 9, 2007, so plaintiffs may assert no claim based on allegedly false statements published before July 9, 2006.  Any claim based on statements allegedly made in 2004 is time-barred.

---

[12] Section 74 of New York's Civil Rights Law provides a privilege for "fair and true report[s] of any judicial . . . or other official proceeding."  This "absolute" privilege cannot be "defeated by the plaintiff's allegations of malice or bad faith," *Pelayo v. Celle*, 270 A.D.2d 469, 469 (2d Dep't 2000), and applies even if the report is partially inaccurate, *Gurda v. Orange County Publ'ns Div. of Ottaway Newspapers, Inc.*, 81 A.D.2d 120, 129-33 (2d Dep't 1981) (Mollen, P.J. and Titone, J., concurring in part, dissenting in part), *rev'd*, 56 N.Y.2d 705 (1982) (adopting Mollen, P.J. and Titone, J. opinion).

3.    <u>**The allegedly defamatory statements are inadequately pled.**</u>

To the extent plaintiffs seek to claim defamation based on any statement published by AP since July 9, 2006, the claim should be dismissed for failing to identify what false information was published, when and by whom.  As this Court has explained:

> [E]ven under the liberal standard of Rule 8, to establish a claim for defamation, the complaint must identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published.

*Treppel v. Biovail Corp.*, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005); *see also*, *e.g.*, *Reeves v. Cont'l Equities Corp. of Am.*, 767 F. Supp. 469, 473 (S.D.N.Y. 1991) (same).  Simply put, "[m]ere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim."  *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000).

Under this controlling standard, the Complaint states no claim for defamation.  Except for statements allegedly made in 2004, the Complaint fails to assert when *any* challenged statement was made, which alone requires dismissal.  *See, e.g*, *Treppel*, 2005 WL 2086339, at *8 ("failure to provide a timeframe deprives [defendant] of information crucial to his ability to respond to the claim"); *Reeves*, 767 F. Supp. at 473 (same).  This shortcoming is magnified by the Complaint's failure to identify either the substance of any post-2004 disputed statement or its alleged speaker, making only a vague reference to the republication of AP statements by others.  Compl. ¶¶ 40, 78.  This fails to provide the essential identification of the allegedly defamatory publication.  *See, e.g.*, *Nickerson v. Commc'n Workers of Am. Local 1171*, 2005 WL 1331122, at *7 (N.D.N.Y. May 31, 2005) (dismissing claim based on unspecified republication).  The Complaint also makes no claim that AP "participated in or approved the republication[s]," making it impossible to discern whether a challenged statement actually reiterates an AP report.  *Johnson v. Shearson*

22

*Loeb Rhoades, Inc.*, 1984 WL 1028, at *5-6 (S.D.N.Y. Oct. 18, 1984) ("the original publisher of a defamatory statement is not automatically liable for subsequent republications"); *accord Khan v. New York Times Co.*, 269 A.D.2d 74, 80 (1st Dep't 2000) (original publisher not liable where third party publication "had simply pulled up the . . . article from its wire service and unilaterally adapted the article to suit its own editorial purposes").

### B.    The Complaint Fails to State Any Other Claim Based Upon the Contents of the AP News Reports

The Complaint asserts tortious interference with prospective economic advantage and with existing contractual relations based on the same allegations of false reporting by AP. Neither claim has any merit.

First, the tortious interference claims explicitly seek to recover for alleged injury to Idema's reputation supposedly resulting from AP's "false statements related to innocent men hanging upside down and other false accusations of outrageous conduct." Compl. ¶¶ 103-104. Because these claims are based on allegedly defamatory statements made in 2004, they are time-barred. *See Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 668 (S.D.N.Y. 2007) (claims for intentional interference with advantageous or contractual relations based on injury to reputation subject to a one-year limitations period); *Entm't Partners Group*, *Inc. v. Davis*, 198 A.D.2d 63, 64 (1st Dep't 1993) (plaintiff may not circumvent one-year statute of limitations by labeling defamation claim as intentional interference with economic relations).

Second, a tortious interference claim cannot be based solely on an alleged injury to reputation. *See, e.g., Demas v. Levitsky*, 291 A.D.2d 653, 658 (3d Dep't 2002); *Dobies v. Brefka*, 273 A.D.2d 776, 778 (3d Dep't 2000). To allow a defective defamation claim to proceed under another theory of liability would be an impermissible end-run on the constitutional limits to liability based on speech. *Cf. Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) (Constitution

requires public figure plaintiff to establish actual malice for intentional infliction of emotional distress claim).

Third, to assert a claim of tortious interference with contract Idema must plead and prove "the existence of a valid contract between the plaintiff and a third party." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). And for a claim of interference with prospective economic advantage, he must plead and prove business relations with a third party. *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994). The Complaint contains neither of these necessary elements and includes only vague, generalized allegations of lost business purportedly attributable to the defendants' conduct. Compl. ¶¶ 101, 104, 108. These, too, are insufficient as a matter of law. *See, e.g.*, *Mobile Data Shred, Inc. v. United Bank of Switzerland*, 2000 WL 351516, at *7 (S.D.N.Y. Apr. 5, 2000) ("plaintiff must demonstrate interference with a specific identified business relationship").

Finally, to state either claim, the alleged interference "must be intentional, *not* merely negligent or *incidental to some other, lawful, purpose*.'" *Dukas v. D.H. Sawyer & Assocs.*, 137 Misc. 2d 218, 221-22 (Sup. Ct. N.Y. Co. 1987) (quoting *Alvord & Swift v. Muller Constr. Co.*, 46 N.Y.2d 276, 281 (1978)) (emphasis added). Here, the Complaint does not – and cannot – allege that the interference was the "sole purpose" of AP's conduct. As the Complaint itself makes plain, AP was reporting on a matter of public concern – the arrest, trial, and conviction of an American citizen in Afghanistan on charges that he tortured innocent Afghans.

For all these reasons, the Complaint states no claim based upon allegedly false information reported by AP about Idema's arrest and prosecution in Afghanistan.

**CONCLUSION**

For each and all the foregoing reasons, the Court should dismiss the Complaint, with

prejudice, and enter such other and further relief as the Court deems just.

Dated:  New York, New York
        October 25, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By:    /s/ Gayle C. Sproul
        David A. Schulz
        Gayle C. Sproul
        Michael Berry (*Pro Hac Vice Motion Filed*)
321 West 44th Street, Suite 510
New York, New York 10036
(212) 850-6100

*Attorneys for Defendants Associated Press
and Associated Press Television News, Inc.*