**Exhibit B**

# Civil · Tentative Rulings

**DEPARTMENT 68 LAW AND MOTION RULINGS**

If you want to submit on the tentative, call the court at 213-974-5707 before 8:30 a.m. the day of the hearing.

**Case Number:** BC345094   **Hearing Date:** May 15, 2006   **Dept:** 68

Bennett et al. v. Columbia University et al
Case No. - BC 345094

Motion: Defendant, Columbia University's Special Motion to Strike Plaintiffs' Complaint Pursuant to the Anti-Slapp Statute

Tentative: Grant. Strike the entire complaint as asserted against moving party Defendant Columbia University

Facts: The complaint alleges that Defendant Columbia University published the Columbia Journalism Review. Plaintiffs contend that the Review published an article in the January/February 2005 issue entitled "Tin Soldier: An American Vigilante in Afghanistan, Using the Press for Profit and Glory." Plaintiffs contend that the article contained false and defamatory statements about Plaintiffs, including false assertions that Plaintiffs' 8mm video Al-Qaida Terrorist Training Tapes were fraudulent. Plaintiffs also contend that Defendants have jointly published an internet site (known as a blog site,) which contains false and defamatory statements. Plaintiff asserts one cause of action for Defamation.

Analysis:
1. CCP § 425.16, which governs anti-SLAPP motions, requires that court engage in a two-step process under Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002)

A. Determine whether Defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.

B. If such a showing has been made, the court then determines whether the Plaintiff has demonstrated a probability of prevailing on the claim.

"Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." [emphasis added]. Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002)

C. Protected "Acts"

CCP sec. 425.16 (e) states, "As used in this section, 'an act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

2. There is no dispute that the complaint falls within the scope of the statute. The complaint alleges one cause of action for defamation arising from Defendant's publication of an article allegedly containing defamatory statements. Thus, Defendant has made its threshold showing.

A. Scope of the Statute. CCP sec. 425.16(b) states:

"(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

B. "Further, news reporting activity is free speech. Nothing in any portion of subdivision (e), which is unambiguous on its face, confines free speech to speech which furthers the exercise of petition rights." Braun v. Chronicle Publishing Co., 52 Cal. App. 4th 1036, 1046 (1997)

"[A] matter has public meaning or significance within the language of section 425.16, subdivision (a) because and solely because (1) it occurs within the context of the proceedings delineated in clause one . . . ; or (2) it occurs in connection with an issue under consideration or review by one of the bodies or proceedings delineated in clause two; or (3) it is an issue of public interest that is aired to the public or in a public forum." Braun v. Chronicle Publishing Co., 52 Cal.App.4th 1036 (1997)

3. The burden then shifts to Plaintiffs to show a Probability of prevailing on the merits

"If the [moving party] defendant establishes a prima facie case, then the burden shifts to the [opposing party] plaintiff to establish "'a probability that the plaintiff will prevail on the claim,'" i.e., "make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor [citation omitted]. In making its determination, the trial court is required to consider the pleadings and the supporting and opposing affidavits stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b).)." Church of Scientology v. Wollersheim 42 Cal.App.4th 628, 646 (1996).

4 What should the court consider:

"The court should not weigh the evidence. Rather, it must merely look to see whether the plaintiff has offered a prima facie showing of fact which would, if

proven, support a judgment." Church of Scientology at 653

5. Elements of a defamation claim

A. Civ Code § 45.
Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

B. Plaintiffs must allege the exact words claimed to be defamatory.

"It is sometimes said to be a requirement, and it certainly is the common practice, to plead the exact words or the picture or other defamatory matter. The chief reason appears to be that the court must determine as a question of law whether the defamatory matter is on its face or capable of the defamatory meaning attributed to innuendo. Hence, the complaint should set the matter out verbatim, either in the body or as an attached exhibit. (See Des Granges v. Crall 27 Cal App. 313 (2d App Dist 1915))." 5 Witkin California Procedure, Pleading, § 695 (4th Edition 1997)

"[...] the specific point was here made that the words used were not made to appear in the pleading. The order sustaining the demurrer for that ground alone was the proper one to be entered. In the case of Haub v. Friermuth, 1 Cal. App. 556, [82 Pac. 571], that being an action for libel where the court refers to the requirements to be observed by the plaintiff in pleading his cause of action, it is said: "It is not sufficient to merely allege that he charged the plaintiff with having committed a certain designated crime. The words must be set out in the complaint that the defendant may have notice of the particular charge which he is required to answer." Des Granges v. Crall, 27 Cal. App. 313, 315 (1915).

C. The statement must be of and concerning the Plaintiffs.

"The defamatory matter must be published concerning the plaintiff." Kelly v. Johnson Publishing Co., 160 Cal. App. 2d 718, 723-724 (1958)

"While section 460 of the Code of Civil Procedure provides that in an action for libel it is not necessary to state in the complaint any extrinsic facts for the purpose of showing application to the plaintiff of the defamatory matter out of which the cause of action arose, it must contain an allegation to the effect that the libelous statements were published concerning the plaintiff." Saucer v. Giroux, 54 Cal. App. 732, 733 (1921).

D. Plaintiffs have not set out the words alleged to be libelous. Paragraph 10 of the complaint alleges only that Defendant CJR published false and defamatory written statements about Plaintiffs including, but not limited to, the false assertion that Plaintiffs' 8mm VideoX al-Qaida Terrorist Training Tapes ("Tapes") are fraudulent.

Plaintiffs' case appears to center on one sentence that appeared in the article. "In a nutshell, Warrington said, the videotapes are forgeries." Opp. 7:19. Plaintiffs refer to this as the "principal libel at issue." Opp. 7:22.

The article at page 2 of Ex. 1 to the declaration of Blake refers to Plaintiff Idema as the creator of the tapes:

"A frame from Jonathan Keith Idema's "VideoX" tapes, which he sold to press

outlets as an Al Qaeda training-camp film Questions are emerging about the tapes' authenticity."

Plaintiffs also make reference to another statement:

"not only were they staged, but you could single Idema's voice out directly." Opp 8:9 Blake Declaration, Ex. 1, page 26.

If these sentences together constitute the principal libel at issue, then the motion should be granted as against Plaintiffs Brent Bennett and Counterr Group. Neither Plaintiffs' complaint nor the opposition establishes that the statements were "of and concerning" these particular Plaintiffs.

6. Statements characterized as "neutral reporting" are protected by the First Amendment in some jurisdictions, but it does not appear that California recognizes that privilege. Instead, California recognizes that a publisher is liable for the republication of a defamatory statement.

"At common law, one who republishes a defamatory statement is deemed thereby to have adopted it and so may be held liable, together with the person who originated the statement, for resulting injury to the reputation of the defamation victim. (See Rest.2d Torts, § 578.) California has adopted the common law in this regard." Khawar v. Globe Internat., Inc , 19 Cal. 4th 254, 268 (1998)

A. The "neutral reporting privilege" defined.

"In a 1977 decision, a federal appellate court held that, under certain circumstances, as an exception to the common law republication rule, the federal Constitution's First Amendment mandates an absolute privilege for the republication of defamatory statements. ( Edwards v. National Audubon Society, Inc. (2d Cir. 1977) 556 F.2d 113, cert. den. 434 U.S. 1002 [98 S. Ct. 647, 54 L. Ed. 2d 498] (Edwards).) This privilege has since come to be known as the neutral reportage privilege. The Edwards court defined the privilege this way: "[W]hen a responsible, prominent organization . . . makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity.'" Khawar v. Globe Internat., Inc., 19 Cal 4th 254, 268 (1998).

B. The California Supreme Court in Khawar noted it has never addressed whether the privilege will be recognized in this state.

"The United States Supreme Court has not stated whether it agrees with this theory, and it has never held that the First Amendment mandates a neutral reportage privilege (see Harte-Hanks Communications v. Connaughton (1989) 491 U.S. 657, 660, fn. 1 [109 S. Ct. 2678, 2682, 105 L. Ed. 2d 562] [declining to decide the issue]). Nor have we ever addressed the question whether the neutral reportage privilege will be recognized in this state. n2

n2 In some published decisions, our state Courts of Appeal have mentioned the neutral reportage privilege as a doctrine proposed or adopted in other jurisdictions (e.g., Stockton Newspapers, Inc. v. Superior Court (1988) 206 Cal. App. 3d 966, 981, fn. 6 [254 Cal. Rptr. 389]) or have quoted language relating to the privilege from Edwards, supra, 556 F.2d 113, while deciding distinct issues (e.g , Grillo v. Smith (1983) 144 Cal. App. 3d 868, 872 [193 Cal. Rptr. 414] [holding that allegedly defamatory statements were opinion]; Weingarten v. Block (1980) 102 Cal. App. 3d 129, 148 [162 Cal. Rptr. 701] [holding evidence insufficient to

demonstrate actual malice]). But to our knowledge there is no published decision in which a Court of Appeal of this state has held that the neutral reportage privilege is required by either the federal or the state Constitution or otherwise is recognized in this state." Khawar v. Globe Internat., Inc., 19 Cal. 4th 254, 269 (1998)

Therefore, Defendants' theory that the statements are protected under the First Amendment by the neutral reporting privilege is not persuasive given the Supreme Court's characterization of the existence of the privilege as uncertain.

"Because the United States Supreme Court has never held that the First Amendment requires recognition of a neutral reportage privilege, the very existence of the privilege as a matter of constitutional law is uncertain. Deciding whether either the federal or the state Constitution mandates some form of neutral reportage privilege is a task that we leave for another day." Khawar v Globe Internat., Inc., 19 Cal. 4th 254, 271 (1998)

7. Plaintiffs do not dispute Plaintiff Idema is a public figure and must demonstrate actual malice.

A  Plaintiff's burden of proof:

"To prove actual malice, therefore, a plaintiff must 'demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement.' [citations omitted]. " Khawar v. Globe Internat., Inc., 19 Cal. 4th 254, 275 (1998).

"Actual malice is judged by a subjective standard; otherwise stated, 'there must be sufficient evidence to permit the conclusion that the defendant . . had a 'high degree of awareness of . . . probable falsity.' " ( Harte-Hanks Communications v. Connaughton, supra, 491 U.S. 657, 688 [109 S. Ct. 2678, 2696].) To prove this culpable mental state, the plaintiff may rely on circumstantial evidence, including evidence of motive and failure to adhere to professional standards. (Ibid.; see also Reader's Digest Assn. v. Superior Court, supra, 37 Cal. 3d 244, 257-258.) When, as in this case, a finding of actual malice is based on the republication of a third party's defamatory falsehoods, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient." ( Harte-Hanks Communications v. Connaughton, supra, 491 U.S. 657, 688 [109 S. Ct. 2678, 2696].) Nonetheless, the actual malice finding may be upheld " 'where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports' " (ibid.), and the republisher failed to interview obvious witnesses who could have confirmed or disproved the allegations ( id. at p. 682 [109 S. Ct. at p. 2693]) or to consult relevant documentary sources ( id. at pp. 683-684 [109 S. Ct. at pp. 2693-2694] [failure to listen to tape])." Khawar v. Globe Internat., Inc., 19 Cal. 4th 254, 275-276 (Cal. 1998) [emphasis added].

"When a public figure sues for defamation, the first amendment bars recovery unless the defamatory falsehoods were made with knowledge of falsity or with reckless disregard for the truth. [...] The proof must be "clear and convincing"; a mere preponderance of the evidence is not enough Gertz v. Robert Welch, Inc., supra at 342; see New York Times Co. v. Sullivan, supra at 285-86. "Reckless disregard of the truth [means] subjective awareness of probable falsity: 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" Hotchner V. Castillo-Puche, 551 F.2d 910, 912-913 (2d Cir. 1977).

"The failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy. (See St. Amant v. Thompson, supra, 390 U.S. 727, 733 [20 L.Ed.2d 262, 268]; Beckley Newspapers v. Hanks (1967) 389 U.S. 81, 84-85 [19 L.Ed.2d 248, 252, 88 S.Ct. 197].) Similarly, mere proof of ill will on the part of the publisher may likewise be insufficient." Reader's Digest Ass'n v. Superior Court, 37 Cal. 3d 244, 258 (1984)

B. Plaintiff's evidence in support of malice. See Opp. beginning at 13:5.

1. Plaintiff claims there are obvious reasons to doubt Warrington's (the informant quoted in the article) forgery allegations based on a memo to Fox News. RJN Ex. A. Defendant's evidentiary objection to this document is sustained (see rulings below) as there is no proper grounds for taking judicial notice of it under Ev Code § 452.

2. Plaintiff claims Defendant failed to use readily available means to verify by interviewing obvious witnesses to confirm or disprove the allegations, or having independent experts inspect the tapes, instead attempting to pay for "phony witnesses." Plaintiff refers generally to the Latif Declaration. However, it is not clear why Latif's declaration is being proffered. Latif is a citizen and resident of Afghanistan and is Senior Commander in the Ministry of Justice of the Islamic State of Afghanistan. Why is he an "obvious witness?" To the extent the various declarations submitted by Afghani military personnel are proffered to establish "obvious witnesses" that Blake should have contacted, failure to conduct a thorough investigation, standing alone, is not sufficient to show malice. There must be obvious reasons to doubt the veracity of the informant, which Plaintiff has not shown through admissible evidence.

Plaintiff also refers to emails by "Marayah" at columbia.edu in which she offers to pay expenses for any witness with information about the tapes. Defendant's objection to the emails are sustained because they are not properly authenticated.

3. Plaintiff argues that malice by Blake is "exemplified by her perniciously false characterization of Idema's military career." Opp 1:27-28. Plaintiff argues that Idema's official military file contradicts Blake's characterization of Idema. However, Plaintiff relies on the Bumback declaration for this. Defendant's objections to Bumback's declarations regarding the contents of a file that is not submitted are sustained.

4. Plaintiff concludes that Blake and her "cohorts'" activities in illegally obtaining or using private documents, vilifying Idema in chat rooms, posting unprofessional and vicious personal attacks on blog sites, were in reckless disregard for the truth. The chatroom references are attached to the declaration of Bumback, who has not properly authenticated these documents, or any of the exhibits he has submitted.

Plaintiff's evidence is largely inadmissible and does not meet the strict test for actual malice, which requires clear and convincing evidence.

8. Allowance of Fees under the Statute — Mandatory to prevailing Defendant

A. CCP 425.16

"(c)In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's

fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

B  The statute allowing fees is mandatory according to Ketchum v. Moses 24 Cal.4th 1122, 1131 (2001)

"[U]nder Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Id., subd. (a).) The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement. As will appear, by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents, beginning with Serrano v. Priest (1977) 20 Cal. 3d 25 [141 Cal. Rptr. 315, 569 P.2d 1303] (hereafter Serrano III).

Defendant should separately file a motion for fees with supporting evidence.

Defendant's Objections to Plaintiff's Evidence

1. Bumback Decl. ¶ 18, at 7:1-2: Sustain

2. Bumback Decl. ¶ 18, at 7:13-17: Sustain

3. Bumback Decl ¶ 20, at 8:1-2: Sustain

4  Bumback Decl. ¶ 21, at 8:9-10: Sustain

5. Bumback Decl ¶ 21, at 8:10-11: Sustain

6. Bumback Decl. ¶ 22, at 9:2-3: Sustain

7. Bumback Decl. ¶ 22, at 9:3-4: Sustain

8  Bumback Decl. ¶ 22, at 9:6-8: Sustain

9. Bumback Decl ¶ 22, at 10:9-11: Sustain

10. Bumback Decl. ¶ 22, at 10:24-11:2: Sustain

11  Bumback Decl. ¶ 22, at 11:10-11: Sustain

12. Bumback Decl. ¶ 23, at 13:14: Sustain

13. Bumback Decl. ¶ 23, at 14:1-3: Sustain

14. Bumback Decl. ¶ 23, at 14:5-7: Sustain

15. Bumback Decl. Ex. 1, pp. 11-16: Sustain

16  Bumback Decl. Ex. 1, pp. 17-22: Sustain

17. Bumback Decl. Ex. 1, pp 23-26: Sustain

18. Bumback Decl. Ex. 2: Sustain

19. Bumback Decl. Ex. 4: Sustain

20. Bumback Decl. Ex. 5: Sustain

21. Bumback Decl. Ex. 6: Sustain

22. Idema Decl. ¶ 4, at 1:19-24: Sustain

23. Idema Decl. ¶ 4, at 1:25-26: Sustain

24. Idema Decl. ¶ 6, at 2:8-10: Sustain

25. Idema Decl. ¶ 7, at 3:2-4: Sustain

25. Idema Decl. ¶ 7, at 4:1: Sustain

26. Idema Decl. ¶ 7, at 4:11: Sustain

27. Idema Decl. ¶ 7, at 4:16-17: Sustain

28. Idema Decl. ¶ 7, at 4:23-5:2: Sustain

29. Idema Decl. ¶ 8, at 8:3-4: Sustain

30. Idema Decl. ¶ 8, at 8:10-12: Sustain

31. Idema Decl. ¶ 8, at 8:12: Sustain

32. Idema Decl. ¶ 8, at 8:25-26: Sustain

34. Idema Decl. ¶ 8, at 10:12: Sustain

35. Idema Decl. ¶ 8, at 10:20: Sustain

36. Idema Decl. ¶ 8, at 11:1-2: Sustain

37. Idema Decl. ¶ 8, at 11:2-3: Sustain

38. Idema Decl. ¶ 8, at 11:3-7: Sustain

39. Idema Decl. ¶ 8, at 11 n.12: Sustain

40. Idema Decl. ¶ 8, at 11:10-12: Sustain

41. Idema Decl. ¶ 8, at 11:13-15: Sustain

42. Idema Decl. ¶ 8, at 11:15: Sustain

43. Idema Decl. ¶ 8, at 11:19-20: Sustain

44. Idema Decl. ¶ 8, at 11:20-21: Sustain

45. Idema Decl. ¶ 8, at 11:22: Sustain

46. Idema Decl. ¶ 8, at 12:1-2: Sustain

47. Idema Decl. ¶ 8, at 14:13-14: Overrule

48. Idema Decl. ¶ 8, at 14:14: Sustain

49. Idema Decl. ¶ 8, at 14:14-15: Sustain

50. Idema Decl. ¶ 8, at 14:15-16: Sustain

51. Idema Decl. ¶ 10, at 15:7-15: Sustain

52. Idema Decl. ¶ 10, at 15:15-17: Sustain

53. Idema Decl. ¶ 10, at 15:17-19: Sustain

54. Idema Decl. ¶ 11, at 15:20-24: Sustain

55. Idema Decl. ¶ 11, at 15:25-16:3: Sustain

56. Idema Decl. ¶ 11, at 16:5-7: Sustain

57. Idema Decl. ¶ 11, at 16:7-9: Sustain

58. Idema Decl. Ex. 7: Sustain

59. Idema Decl. Ex. 9: Sustain

60. Idema Decl. Ex. 10: Sustain

61. Idema Decl. Ex. 11: Sustain

62. Idema Decl. Ex. 13: Sustain

63. Idema Decl. Ex. 14: Sustain

64. Idema Decl. Ex. 15: Sustain

65. Latif Decl. ¶ 4, at 2:20-23: Sustain

66. Latif Decl. ¶ 5, at 3:3-8: Sustain

67. Latif Decl. ¶ 6, at 3:16-23: Sustain

68. Latif Decl. ¶ 7, at 4:3-10: Sustain.

69. Latif Decl. ¶ 8, at 5:1-2: Sustain

70. Latif Decl ¶ 10, at 7:12-13: Sustain

71. Latif Decl. ¶ 10, at 7:22-25: Sustain

72. Latif Decl. ¶ 10, at 9:27: Sustain

73. Banderas Mar. 21 Decl ¶ 3, at 1:24-2:2: Sustain

74  Banderas Mar. 21 Decl. ¶ 3, at 2:4-6: Sustain

75  Banderas Mar. 21 Decl. ¶ 4, at 2:8-9: Sustain

76. Banderas Mar. 21 Decl. ¶ 5, at 2:10-14: Sustain

77  Banderas Mar. 21 Decl. ¶ 6, at 2:16-19: Sustain

78  Banderas Mar. 21 Decl. ¶ 7, at 2:20-21: Sustain

79. Banderas Mar. 21 Decl. ¶ 7, at 2:21-24: Sustain

80  Banderas Mar. 21 Decl. ¶ 8, at 2:26-3:5: Sustain

81. Banderas Mar. 21 Decl. ¶ 9, at 3:7-10: Sustain

82  Banderas Mar. 21 Decl. ¶ 9, at 3:10-13: Sustain

83. Banderas Mar. 21 Decl. ¶ 10, at 3:14-25: Sustain

84. Banderas Mar. 21 Decl. ¶ 11, at 4:1-2: Sustain

85  Banderas Mar. 21 Decl. ¶ 11, at 4:2-3: Sustain

86  Banderas Mar. 21 Decl. ¶ 12, at 4:5-12: Sustain

87  Banderas Mar. 21 Decl. ¶ 13, at 4:14-15: Sustain

88. Banderas Mar. 21 Decl. ¶ 14, at 4:17-19: Sustain

89. Banderas Mar. 21 Decl. ¶ 15, at 4:20-22: Sustain

90. Banderas Mar. 21 Decl. ¶ 16, at 4:24-26: Sustain

91. Banderas Mar. 21 Decl. ¶ 16, at 4:26-27: Sustain

92. Banderas Mar. 21 Decl. ¶ 17, at 5:1-3: Sustain

93. Banderas Mar. 21 Decl. ¶ 18, at 5:5-8: Sustain

94. Banderas Mar. 21 Decl. ¶ 20, at 5:17-19: Sustain

95  Banderas Mar. 21 Decl. ¶ 20, at 7:1-3: Sustain

96. Banderas Mar. 21 Decl. ¶ 20, at 9:4: Sustain

96  Banderas Mar. 21 Decl. ¶ 21, at 9:23-28: Sustain

97. Banderas Mar. 27 Decl. ¶ 3, at 1:24-28: Sustain

98. Banderas Mar. 27 Decl. ¶ 4, at 2:1-2: Sustain

99  Banderas Mar. 27 Decl. ¶ 4, at 2:5-6: Sustain

100  Banderas Mar. 27 Decl. ¶ 5, at 2:7-8: Sustain

101. Banderas Mar. 27 Decl. ¶ 6, at 2:10-12: Sustain

102. Banderas Mar. 27 Decl. ¶ 7, at 2:14-21: Sustain

103. Banderas Mar. 27 Decl. ¶ 8, at 2:22-28: Sustain

104. Banderas Mar. 27 Decl. ¶ 9, at 3:1-5: Sustain

105. Banderas Mar. 27 Decl. ¶ 10, at 3:7-9: Sustain

107. Banderas Mar. 27 Decl. ¶ 10, at 3:9-10: Sustain

108. Banderas Mar. 27 Decl. ¶ 11, at 3:11-17: Sustain

109. Banderas Mar. 27 Decl. ¶ 12, at 3:19-20: Sustain

110. Banderas Mar. 27 Decl. ¶ 13, at 3:21-4:7: Sustain

111. Banderas Mar. 27 Decl. ¶ 14, at 4:9-10: Sustain

112. Banderas Mar. 27 Decl. ¶ 14, at 4:10-12: Sustain

113. Banderas Mar. 27 Decl. ¶ 15, at 4:14-16: Sustain

114. Banderas Mar. 27 Decl. ¶ 16, at 4:18-20: Sustain

115. Banderas Mar. 27 Decl. ¶ 17, at 4:22-24: Sustain

116. Banderas Mar. 27 Decl. ¶ 18, at 5:4-6: Sustain

117. Banderas Mar. 27 Decl. ¶ 18, at 5:6-8: Sustain

118. Banderas Mar. 27 Decl ¶ 18, at 6:13-14: Sustain

119. Banderas Mar. 27 Decl. ¶ 18, at 7:24-25: Sustain

120. Banderas Mar. 27 Decl. ¶ 18, at 8:13: Sustain

121. Banderas Mar. 27 Decl. ¶ 20, at 9:5-10: Sustain

122. Banderas Mar. 27 Decl. Ex. 16: Sustain

123. Banderas Mar. 27 Decl. Ex. 17: Sustain

124. Banderas Mar. 27 Decl. Ex. 18: Sustain

125. Banderas Mar. 27 Decl. Ex. 19: Sustain

126. Wahad Decl. ¶ 3, at 2:1-3: Sustain

127. Wahad Decl. ¶ 4, at 2:5-15: Sustain

128. Wahad Decl. ¶ 5, at 2:16-20: Sustain

129. Wahad Decl. ¶ 6, at 2:22-28: Sustain

5/14/2006

130. Wahad Decl. ¶ 7, at 3:1-8: Sustain

131. Wahad Decl. ¶ 9, at 3:10-14: Sustain

132. Wahad Decl. ¶ 10, at 3:15-18: Sustain

133. Wahad Decl. ¶ 11, at 3:19-21: Sustain

134. Wahad Decl. ¶ 12, at 3:23-27: Sustain

134. Wahad Decl. ¶ 13, at 4:6-7: Sustain

135. Wahad Decl. ¶ 14, at 4:18-19: Sustain

136. Wahad Decl. ¶ 14, at 6:4-7: Sustain

137. Wahad Decl. ¶ 21, at 6:9-12: Sustain

139  Sangary Declaration: Sustain

140  Mohammed Son of Anan Decl. Ex. 20: Sustain

141. Request for Judicial Notice, Ex. A: Sustain

142. Request for Judicial Notice, Ex. B: Sustain

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                    FOR THE COUNTY OF LOS ANGELES
 3      DEPARTMENT 68           HON. LEE SMALLEY EDMON, JUDGE
 4
 5      BRENT BENNETT, ET AL.,      )
                                    )
 6              PLAINTIFF,          )
                                    )
 7      VS.                         )   NO# BC345094
                                    )
 8      COLUMBIA UNIVERSITY, ET AL.,)
                                    )
 9              DEFENDANT.          )
                                    )
10      _____)

11             REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                    MONDAY, MAY 15, 2006
13      APPEARANCES:
14      FOR THE PLAINTIFF:       FRANCIS C. PIZULLI, INC.
                                 BY:  FRANCIS C. PIZZULLI
15                                    ATTORNEY AT LAW
                                 718 WILSHIRE BLVD.
16                               SANTA MONICA, CA  90401
                                 (310) 451-8020
17
        FOR THE DEFENDANT:       O'MELVENY & MEYERS
18                               BY:  MARVIN PUTNAM
                                      KEVIN L. VICK
19                                    ATTORNEYS AT LAW
                                 1999 AVENUE OF THE STARS
20                               SUITE 700
                                 LOS ANGELES, CA 90067
21                               (310) 553-6700

22      FOR THE DEFENDANT
        PRO HAC VICE:            CAHILL, GORDON & REINDEL
23                               BY:  FLOYD ABRAMS
                                      BRIAN T. MARKLEY
24                                    ATTORNEYS AT LAW
                                 80 PINE STREET
25      [COPY]                   NEW YORK, NY 10005
                                 (212) 701-3621
26

27      REPORTED BY:             SHERI L. ABRAHAM, CSR 3868
                                 OFFICIAL REPORTER
28
```

*Copying Restricted; Sec. 69954(d) Govt Code.*
*Monday May 15, 2006 Bennett v. Columbia Univ.: Mot of Defts.*

1  UNDER THE CIRCUMSTANCES.

2       FINALLY, THE LAST THING THAT YOU DID REFER TO
3  WAS THIS TELEPHONE NUMBER, THAT IN FACT, YOU HAVE DONE
4  THIS SEARCH, AND IT HAS BEEN TIED TO MS. BLAKE; HOWEVER
5  AS YOU POINTED OUT IN YOUR ARGUMENT, IT'S A DIFFERENT
6  TELEPHONE NUMBER THAN THE TELEPHONE THAT WAS LISTED IN
7  THE DECLARATION IN THE E-MAIL. AND SO IT DOESN'T PROVE
8  AT ALL THAT HER STATEMENT, THAT SHE DOESN'T KNOW THAT
9  TELEPHONE NUMBER WAS IN FACT FALSE.

10      ALL THINGS CONSIDERED, UNFORTUNATELY, BECAUSE
11 OF THE TIME, I CAN'T ENTERTAIN FURTHER ARGUMENT. I HAVE
12 NOW LET THIS GO ON 20 MINUTES PAST WHEN I SAID I HAD TO
13 GET ON A CONFERENCE CALL. AND MR. PIZZULLI, IT'S TRUE,
14 I CALLED THE CASE ONCE BEFORE YOU GOT HERE THIS MORNING,
15 AND YOU WERE NOT PRESENT. AND SO I ASKED TO WAIT AND
16 DEFER. BUT UNFORTUNATELY, I'M GOING TO HAVE TO NOT
17 ENTERTAIN ANY FURTHER ARGUMENT.

18      THE COURT'S TENTATIVE WILL BECOME THE RULING
19 OF THE COURT. THE ANTI-SLAPP MOTION IS GRANTED. AND
20 REQUESTS FOR FEES SHOULD COME IN A SEPARATE APPLICATION.

21    MR. ABRAMS: THANK YOU, YOUR HONOR.

22    THE COURT: IS NOTICE WAIVED WITH RESPECT TO THE
23 RULING ON THE MOTION?

24    MR. PUTNAM: YES, YOUR HONOR.

25    THE COURT: MR. PIZZULLI, NOTICE WAIVED?

26    MR. PIZZULLI: YES, YOUR HONOR.

27    THE COURT: OKAY, THANK YOU SO MUCH. THE CASE
28 MANAGEMENT CONFERENCE, JUST SO THE RECORD IS CLEAR, THE